## State of Vermont v. Steven Larose

[554 A.2d 227]

No. 85-240

Present: Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.

Opinion Filed September 2, 1988

*James A. Hughes, Franklin County Deputy State's Attorney*, St. Albans, for Plaintiff-Appellee.

*Daniel Albert, Public Defender*, and *Kate Cleary, Law Clerk (On the Brief)*, St. Albans, for Defendant-Appellant.

**Dooley, J.** In the evening of July 7, 1984, two St. Albans policemen responded to a complaint at a local bar. On arriving at the bar, they found a crowd of people in front of the bar on the sidewalk. Apparently, the crowd gathered as a result of a melee between Andy Larose, brother of defendant Steven Larose, and the owner of the bar. After investigating the incident, the officers arrested both Larose brothers for disorderly conduct. Both brothers were very intoxicated at the time of the arrest. With some difficulty, the officers placed the Larose brothers in the police car and took them to the St. Albans police station.

At the police station, the officers had to take the Larose brothers up a long flight of stairs. One officer, Marcel Renaudette, led Andy Larose up the stairs and reached the top. The other officer, Osburne Glidden, was leading defendant Steven Larose up the stairs when defendant pulled free and kicked Officer Glidden on the thigh causing a bruise.

Defendant was charged with causing bodily injury to a law enforcement officer while he was performing a lawful duty in violation of 13 V.S.A. § 1028(a). After a one-day trial, he was convicted of that offense by a jury in February of 1985. He appeals to this Court, alleging two evidentiary errors, one of constitutional dimension, and an error in the charge to the jury. We affirm.

The first alleged evidentiary error involves a motion in limine filed by the State and granted by the trial court. The motion requested the court to "prohibit the defendant from mentioning or raising, at trial, any complaints that have ever been filed against Officer Marcel Renaudette for alleged excessive use of force and any internal investigation conducted by the State Police into such allegations." The State argued that the motion should be granted because defendant was not charged with assaulting Officer

Renaudette and neither the complaints nor the investigation had ever led to any action against the officer. Thus, it argued that the complaints and investigation were irrelevant and, in any event, the probative value of this evidence was outweighed substantially by the danger of unfair prejudice. See V.R.E. 401, 402, 403. Defendant argued that the evidence was admissible under V.R.E. 405(b) as specific acts showing a character trait of Officer Renaudette relevant to defendant's claim that he acted lawfully to defend his brother against the use of excessive force by Officer Renaudette.

At trial both officers and both Larose brothers testified. Officer Glidden testified that as he led defendant up the stairs, defendant broke free and kicked him without provocation. Officer Renaudette stated that he observed this kick. Defendant described the incident very differently, denying that he ever kicked Officer Glidden but describing a pattern of brutality on him and his brother by both officers. Defendant testified that at the time that Andy Larose was at the top of the stairs and he was on the landing, they were both struck by the officer who was with them, causing them to fall to the stairs. The testimony of Andy Larose supported that of his brother.

Defendant offered no evidence that either officer had a reputation for brutality or that either had committed specific acts of brutality in the past. There was no evidence that defendant or his brother knew either officer prior to the incident or knew of their reputations or character.

At the request of defendant, the trial court charged the jury that defendant could not be convicted if he acted in self-defense. The court set forth two of the elements of self-defense as "a reasonable belief on the part of defendant that injury to himself or his brother could only be prevented by the immediate infliction of injury upon Officer Glidden" and "there was no other reasonable way to avoid assaulting the Officer."

In this Court, defendant attacks the grant of the motion in limine on three grounds: (1) the evidence excluded was admissible under V.R.E. 405 and 406; (2) exclusion of the evidence violated the confrontation clause of the Sixth Amendment to the United States Constitution and Chapter 1, Article 10 of the Vermont Constitution; and (3) exclusion of the evidence violated defendant's right under Chapter I, Article 10 of the Vermont Constitu-

tion "to call for evidence in his favor." We take these claims in order.

Central to defendant's evidentiary position is the thesis that Officer Renaudette could be found to have brutalized Andy Larose, defendant's brother, in this case because complaints against him show a pattern of such conduct in the past. In general, "courts do not allow parties to prove that a person did the thing in question by proving that he or she had in the past done a similar thing." *State* v. *Patnaude*, 140 Vt. 361, 370, 438 A.2d 402, 405 (1981). Our rules do, however, allow evidence of the habit of a person "to prove that the conduct of the person . . . on a particular occasion was in conformity with the habit . . . ." V.R.E. 406. They also allow the accused to show "a pertinent trait of character of the victim of the crime offered by an accused" and to show the character for truthfulness or untruthfulness of a witness. V.R.E. 404(a)(2), 404(a)(3), 608.

We can dispose quickly of the argument that the evidence was admissible because it showed a habit. As the Reporter's Notes to V.R.E. 406 point out, a properly established habit requires a "uniformity and semi-automatic character." Taking defendant's evidence in its best light, it does not establish a habit with these characteristics. Thus, V.R.E. 406 does not support admissibility on that theory.

Defendant's attempt to have the evidence admitted as character evidence fares little better. "Character is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness." McCormick on Evidence § 195, at 574 (3d ed. 1984). We agree with defendant that the evidence may have tended to show that Officer Renaudette had a disposition toward violence in handling criminal defendants. To ensure character evidence is not misused to divert attention from the incidents involved in the trial to the character of witnesses, the Rules of Evidence impose significant limits on the use of character evidence.[1] V.R.E.

---

[1] V.R.E. 404(b) allows evidence of past "crimes, wrongs or acts" to be admitted for noncharacter purposes, for example, to prove motive, opportunity, intent, preparation, knowledge, plan, etc. See, e.g., *State* v. *Catsam*, 148 Vt. 366, 379-80, 534 A.2d 184, 193 (1987). Defendant has not argued that Rule 404(b) allows the evidence to be admitted and has made no claim that the purpose of the evidence was other than to show a disposition towards the use of excessive force by Officer Renaudette. Since defendant does not claim V.R.E. 404(b) grounds for ad-

404(a)(2) allows evidence of a "pertinent trait of character of the victim of the crime offered by an accused." We have not, however, adopted such a liberal rule for nonvictim witnesses like Officer Renaudette. The rules limit character evidence about witnesses to impeachment under V.R.E. 607, 608, 609. While these rules allow instances of conduct to show character, see V.R.E. 608(b), this evidence may relate only to "character for truthfulness or un-truthfulness." V.R.E. 608(b).

It is arguable that the evidence here went to Officer Renaudette's credibility since his testimony, consistent with that of Officer Glidden, denied any misconduct in the handling of the Larose brothers. We are reluctant, however, to sanction that broad a view of evidence of character for truthfulness. The Reporter's Notes point out that Rule 608 may have brought about a change in Vermont law in this area:

> To the extent that the foregoing or other Vermont cases may be read as permitting evidence of other traits, Rule 608(a) is of narrower scope. The rule has been adopted for the reasons suggested by the Federal Advisory Committee's Note: "to sharpen relevancy, to reduce surprise, waste of time and confusion, and to make the lot of the witness somewhat less unattractive.

Reporter's Notes, V.R.E. 608(a). McCormick supports this limitation for the following reasons:

> This . . . view is arguably the fairest and most expedient practice because of the dangers otherwise of prejudice (particularly if the witness is a party), of distraction and confusion, of abuse by the asking of unfounded questions, and of the difficulties, as demonstrated in the cases on appeal, of ascertaining whether particular acts relate to character for truthfulness.

McCormick on Evidence § 42, at 90-91 (3d ed. 1984). See also 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 608[05], at 608-47 (1987) (commenting on the identical Federal Rule: "Since Rule 608(b) is intended to be restrictive — and was amended to ensure

---

mission of the evidence, we do not consider this possibility. See State v. Bissonette, 145 Vt. 381, 392, 488 A.2d 1231, 1237 (1985) (defendant's objection on another ground does not preserve an objection under V.R.E. 404(b)).

it would be restrictively interpreted by trial courts — the inquiry on cross-examination should be limited to these specific modes of conduct which are generally agreed to indicate a lack of truthfulness."). Also, we note that in this case defendant never claimed he was offering the evidence to attack Officer Renaudette's veracity. See *State* v. *Bisson*, 491 A.2d 544, 549 (Me. 1985) (offer of proof on credibility necessary to admit cross-examination of police officer on Rule 608(b) grounds).

It is also significant that Rule 608(b) allows discretion rather than requiring the admission of evidence. It allows cross-examination on specific instances of conduct "in the discretion of the court." Thus, the court here was not required to allow the proposed cross-examination if other considerations outweighed the probative value of the evidence. See *State* v. *Zadakis*, 511 A.2d 1074, 1075 (Me. 1986); see also *State* v. *McGann*, 128 N.H. 186, 190,.514 A.2d 1247, 1250 (1986).

Finally, the State relied heavily on Rule 403 of the Vermont Rules of Evidence in support of its motion in limine. The rule allows the trial judge to exclude relevant evidence where the probative value is substantially outweighed by "the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." The trial judge has substantial discretion in making Rule 403 rulings. *State* v. *Parker*, 149 Vt. 393, 400-02, 545 A.2d 512, 516-18 (1988); *State* v. *Catsam*, 148 Vt. 366, 383, 534 A.2d 184, 195 (1987); *State* v. *Dorn*, 145 Vt. 606, 616, 496 A.2d 451, 456 (1985). The ruling can be overturned only on a showing of abuse of discretion. See *State* v. *Parker*, 149 Vt. at 401-02, 545 A.2d at 517-18 (defendant must show that discretion was either totally withheld or was exercised on grounds clearly invalid or unreasonable).

■ Even if Rule 608 can be interpreted to authorize the questions proposed by the defense in this case, we believe it was well within the discretion of the trial court to grant the motion in limine. We have commented in the past that the danger of confusion of the issues increases where the past acts to be admitted are similar to those that the witness is alleged to have committed in the case before the court. See *State* v. *Catsam*, 148 Vt. at 383, 534 A.2d at 195; *State* v. *Gardner*, 139 Vt. 456, 460-61, 433 A.2d 249, 251 (1981). The confusion possible in this case is exacerbated by the fact that the evidence is about a witness and not the victim and might shift the focus of the case away from defendant's al-

leged assault on Officer Glidden.[2] Finally, we think it significant that defendant indicated no intent to show that there was any basis for the complaints — the cross-examination was intended to allow the jury to speculate that the accusations against Officer Renaudette showed that he probably had been violent in the past.

■ Having disposed of defendant's claim under the Rules of Evidence, we turn to the constitutional claims. Defendant's main constitutional claim arises under the Sixth Amendment to the United States Constitution right to confront adverse witnesses and the similar provision of Chapter I, Article 10 of the Vermont Constitution. Defendant relies primarily on *Davis* v. *Alaska*, 415 U.S. 308 (1974), where the Court found a confrontation clause violation because the defendant was not allowed to cross-examine a juvenile witness against him about the witness' juvenile probation for burglary. In *Davis*, the evidence had been excluded based on an Alaska statute that made inadmissible juvenile court adjudication. The Supreme Court held that the primary right secured by the confrontation clause was the right of cross-examination, *id.* at 315, and that the denial of the right to cross-examine with respect to critical evidence going to the bias and credibility of the state's major witness crossed the constitutional limit. *Id.* at 319.

*Davis* is not, however, a mandate for cross-examination on anything the defendant desires. As the Supreme Court noted in *Delaware* v. *Fensterer*, 474 U.S. 15, 20 (1985): "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." More recently, the Court commented in *Delaware* v. *Van Arsdall*, 475 U.S. 673, 679 (1986), that:

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-exami-

---

[2] This is *not* a case where the defendant or his brother knew about the reputation of Officer Renaudette or the past complaints and claimed to act to defend themselves because of that knowledge. Also, defendant denied that he ever kicked Officer Glidden so there is no factual basis for any action in self-defense in this case.

nation based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

See also *State* v. *Gabaree*, 149 Vt. 229, 232, 542 A.2d 272, 273 (1988) (no confrontation clause violation in the refusal to order a psychiatric examination of the victim in view of the opportunity to show defendant's reputation for truthfulness); *State* v. *Raymond*, 148 Vt. 617, 619-21, 538 A.2d 164, 165-67 (1987)(no confrontation clause violation in restriction of cross-examination of witness as to criminal charges against her in light of alternative opportunities to show such charges); *State* v. *Catsam*, 148 Vt. at 377-79, 534 A.2d at 192-93 (no confrontation clause violation in defendant's inability to cross-examine complaining witness in addition to expert who testified about same issue).

As we noted in *State* v. *Brown*, 147 Vt. 324, 328, 515 A.2d 1059, 1062 (1986), neither the Sixth Amendment nor Chapter I, Article 10 of the Vermont Constitution requires the admission of "misleading or unduly prejudicial evidence." See also *State* v. *Johnson*, 143 Vt. 355, 359, 465 A.2d 1366, 1368 (1983).

We believe that this case falls within the area of evidentiary discretion recognized by *Van Arsdall* and *Brown*. The evidence here was properly excluded under our Rules of Evidence because it was misleading, tended to confuse the issues and was unduly prejudicial. As *Van Arsdall* notes, this is an area of traditional trial court discretion that does not offend constitutional guarantees. Defendant was fully able to expose the jury in this case to his defense as well as to the motivations, biases and credibility of the witnesses. Defendant has pointed us to no state or federal case where the exclusion of character evidence under traditional rules or modern codes and rules of evidence has been held to amount to a confrontation clause violation. We find none here.

■ Petitioner's last argument on the evidence against Officer Renaudette is that its exclusion violated his right to "call for evidence in his favor" under Chapter I, Article 10 of the Vermont Constitution. Defendant did not make this argument below and has not, here, briefed why we should find a constitutional violation for the exclusion of evidence made inadmissible by the Vermont Rules of Evidence. Under these circumstances, it would be inappropriate to reach defendant's argument, and we decline to

do so. See *State* v. *Percy*, 149 Vt. 623, 638-39, 548 A.2d 408, 417 (1988); *State* v. *Raymond*, 148 Vt. at 619 n.1, 538 A.2d at 165 n.1; *State* v. *Maquire*, 146 Vt. 49, 54, 498 A.2d 1028, 1031 (1985).

■ Defendant's second alleged evidentiary error relates to evidence of defendant's behavior after the alleged assault on Officer Glidden. After processing, the Larose brothers were placed in a holding cell. According to the testimony of the officers, they were kicking the doors and walls and shouting and screaming. Although they remained handcuffed, both Steven and Andrew Larose managed to get their handcuffs from behind their back to in front and they were pounding the cell bars with their hands.

Defendant alleges that the above evidence was irrelevant and thus inadmissible. The State claims the evidence was admissible to show state of mind and to respond to the self-defense theory.

We have a broad rule of relevancy. V.R.E. 401 defines evidence as relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The decision to admit evidence "lies within the sound discretion of the trial court and will not be overturned on appeal absent a showing of an abuse of that discretion . . . ." *State* v. *Bushey*, 149 Vt. 378, 380, 543 A.2d 1327, 1328 (1988). Specifically, "[r]ulings on remoteness lie largely within the discretion of the trial judge." *State* v. *Shaw*, 149 Vt. 275, 278, 542 A.2d 1106, 1107 (1987).

The evidence here was relevant particularly to the self-defense theory advanced by defendant. It tended to show that the kick of Officer Glidden — if it occurred — was part of a pattern of violent behavior with no controls rather than a calculated act to prevent excessive force. It also offered an explanation for cuts and bruises on defendant's wrists, alternative to the police brutality theory advanced by defendant. There was no error in the admission of the evidence.

■ Finally, defendant alleges there was error in the instructions to the jury because the court referred to the victim, Osburne Glidden, as Officer or Patrolman Glidden during the charge. According to defendant, these references prejudiced his case because one of the essential elements of the crime of assault on a police officer is that the victim is a law enforcement officer. See 13 V.S.A § 1028(a). Thus, defendant argues that the charge impermissibly

relieved the State of its burden of proof. See *State* v. Boise, 146 Vt. 46, 48, 498 A.2d 495, 496 (1985).

While it would have been preferable for the court to avoid references to the official title of the victim, we do not believe the references here require reversal. A jury charge is not erroneous if it, "taken as a whole and not piecemeal, breathes the true spirit of the law, and if there is no fair ground to say that the jury has been misled . . . ." *State* v. *Dusablon*, 142 Vt. 95, 98, 453 A.2d 79, 81 (1982) (citation omitted). The charge here instructed the jury that it must find that the assault was on a law enforcement officer and defined that term. We do not believe a reasonable juror could have interpreted the reference as relieving the State of its burden of proof on this essential element. See *id.*

The cases that have reversed convictions for this kind of charge error are factually distinguishable from this one. In *State* v. *Boise*, 146 Vt. at 48, 498 A.2d at 496-97, this Court reversed a conviction because the trial judge charged the jury that the defendant had conceded an element of the charge when no concession had been made. In *State* v. *Noyes*, 147 Vt. 426, 427-29, 519 A.2d 1152, 1153-54 (1986), we reversed a conviction where the court charged that defendant made a "tacit admission" with respect to one of the elements of the charge, when, in fact, there had not been such an admission.

In this case, there is nothing approaching a statement to the jury that the element was conceded or admitted and withdrawn from their consideration. The fact that the court referred to Osburne Glidden by the titles used by the witness and the parties, including defense counsel in his closing argument, did not relieve the jury from finding him to be a law enforcement officer based on the evidence. There is no cause for reversal.

*Affirmed.*